1

2

3                    **UNITED STATES DISTRICT COURT**

4                   **NORTHERN DISTRICT OF CALIFORNIA**

5                            **SAN JOSE DIVISION**

6

7    ROBERT KINCHELOE, et al.,                    Case No.  21-cv-00515-BLF

8                         Plaintiffs,
                                                  **ORDER DENYING MOTION TO**
9          v.                                     **TRANSFER; GRANTING MOTION TO**
                                                  **DISMISS WITH LEAVE TO AMEND;**
10   AMERICAN AIRLINES, INC.,                     **AND DIRECTING SUBMISSION OF**
                                                  **PLAN FOR LITIGATING VALIDITY**
11                       Defendant.               **OF FORUM SELECTION CLAUSE**

12                                                [Re:  ECF Nos. 27, 44]

13

14

15          Plaintiffs Robert Kincheloe, Vonna Rudine, and Sandra Christafferson filed this collective

16   action against Defendant American Airlines, Inc. for violation of the Age Discrimination in

17   Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  *See* ECF No. 35 ("FAC").  Specifically,

18   Plaintiffs allege that Defendant has offered less valuable consideration to its older flight attendants

19   than to its remaining flight attendants in exchange for the older flight attendants' agreement to

20   retire early.  *Id.* ¶¶ 1-2.  The Court previously conditionally certified this as a collective action on

21   Plaintiffs' ADEA claim.  *See* ECF No. 52.

22          Now before the Court are two motions by Defendant.  Defendant has first filed a Motion to

23   Transfer, arguing that both the traditional convenience factors, *see* 28 U.S.C. § 1404(a), and a

24   forum selection clause in the early retirement agreements compel a transfer to the Northern

25   District of Texas.  *See* ECF No. 27 ("MTT"); *see also* ECF No. 40 ("MTT Reply").  Defendant

26   has also filed a Motion to Dismiss, asking the Court to dismiss the operative complaint with

27   prejudice because Plaintiffs do not and cannot state a claim under the ADEA.  *See* ECF No. 44

28   ("MTD"); *see also* ECF No. 50 ("MTD Reply").  Plaintiffs oppose both motions.  *See* ECF Nos.

*United States District Court*
*Northern District of California*

32 ("MTT Opp."), 46 ("MTD Opp.").  The Court held a hearing on both motions on September 9, 2021.  For the following reasons, the Court DENIES Defendant's Motion to Transfer under 28 U.S.C. § 1404(a), GRANTS Defendant's Motion to Dismiss WITH LEAVE TO AMEND, and DIRECTS the parties to submit a stipulated plan for litigation of the validity of the forum selection clause.

## I.    BACKGROUND

Defendant American Airlines, Inc. operates a commercial airline with ongoing business within this District and Division.  ECF No. 35 ("FAC") ¶ 14.  As alleged in the FAC, Defendant employs thousands of flight attendants who perform the "same primary job duties of providing information, guidance, and assistance for safety and comfort to airline passengers and conducting safety checks."  *Id.* ¶¶ 15-16.  According to the allegations in the operative complaint, in March 2020, Defendant offered a Voluntary Early Out Program ("VEOP") to its flight attendants as consideration in exchange for their agreement to early retirement "to motivate people who really were close to retiring" to retire.  *Id.* ¶ 17-19.  The March 2020 VEOP required flight attendants to have at least 10 years of seniority, and Defendant was allegedly aware that only flight attendants older than 40 were eligible due to Defendant's prior hiring freeze and minimum hiring age requirement.  *Id.* ¶ 20.  Many flight attendants, including Plaintiffs, accepted the March 2020 VEOP.  *Id.* ¶¶ 11-13, 24.

Defendant allegedly provided no truly voluntary choice to its older flight attendants on whether to accept the March 2020 VEOP.  FAC ¶¶ 21-23.  Plaintiffs claim that Defendant pressured its older flight attendants to accept the March 2020 VEOP through various means, such as denying leave of absence, urging them to refrain from wearing masks on airplanes during the COVID-19 pandemic, and misinforming them that there would be no subsequent early retirement offers.  *Id.*  The flight attendants also allegedly did not waive any ADEA rights or claims when agreeing to the VEOP.  *Id.* ¶¶ 27, 29.  Defendant allegedly did not request that its older flight attendants sign releases of claims as part of the consideration for early retirement but later required them to do so after they had already agreed to retire early.  *Id.* ¶¶ 25-26.  The releases also allegedly did not include notices, disclosures, or terms required under the Older Workers Benefit

1   Protection Act ("OWBPA"), 29 U.S.C. § 626(f).  *Id.* ¶ 28.

2        Four months later, Defendant offered another VEOP to its remaining flight attendants.

3   FAC ¶ 30.  The July 2020 VEOP allegedly included more valuable consideration than the March

4   2020 VEOP, such as healthcare flexible spending accounts and flight passes.  *Id.* ¶¶ 31-32.

5        Plaintiffs filed the original complaint on January 21, 2021.  ECF No. 1.  In response to a

6   motion to dismiss, Plaintiffs filed a First Amended Complaint on March 29, 2021.  *See* FAC.  The

7   Court granted Plaintiffs' unopposed motion for conditional certification on June 7, 2021, while the

8   motions that are the subject of this Order were already pending.  ECF No. 52.

9   **II.     MOTION TO TRANSFER**

10       Defendant argues that this case should be transferred to the Northern District of Texas for

11  two reasons:  under the convenience factors analyzed pursuant to 28 U.S.C. § 1404(a) and because

12  of a forum selection clause in the VEOP.  The Court considers each argument in turn.

13       **A.     Legal Standard**

14       "For the convenience of parties and witnesses, in the interest of justice, a district court may

15  transfer any civil action to any other district or division where it might have been brought or to

16  any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The purpose of

17  § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses

18  and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S.

19  612, 616 (1964) (internal quotations omitted).

20       In a motion to transfer analysis, "a valid forum-selection clause should be given

21  controlling weight in all but the most exceptional circumstances."  *Atlantic Marine Const. Co. v.*

22  *U.S. Dist. Court*, 571 U.S. 49, 51 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

23  33 (1988) (Kennedy, J., concurring)).  Where there is a valid forum-selection clause, "the

24  plaintiff's choice of forum merits no weight," the parties' private interests are not considered, and

25  public-interest considerations may be affected by the lack of carry-over of the original forum's

26  choice-of-law rules.  *See id.* at 63-65.

27       In evaluating a motion under § 1404(a), the Court must first consider whether Plaintiffs

28  could have brought the action in the transferee district.  *See Hoffman v. Blaski*, 363 U.S. 335, 343-

United States District Court
Northern District of California

3

44 (1960).  If this threshold requirement is met, then the Court considers the motion to transfer based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Ninth Circuit has identified a number of factors to consider in the process of deciding whether transfer under § 1404(a) is appropriate: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Dillon v. Murphy & Hourihane, LLP*, 2014 WL 5409040, at *13 (N.D. Cal. Oct. 22, 2014) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).

No single factor is dispositive, and district courts have broad discretion to adjudicate transfer motions on a case-by-case basis. *Ctr. for Biological Diversity v. Kempthorne*, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart*, 487 U.S. at 29).  "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

### B.   28 U.S.C. § 1404(a)

In a § 1404(a) analysis, the Court first considers whether this action could have been brought in the Northern District of Texas and then assesses the § 1404(a) factors.

### i.   Whether This Case Could Have Been Brought in the Northern District of Texas

A case may only be transferred to a different judicial district under 28 U.S.C. § 1404(a) if it "might have been brought" in that district or if all parties consent to the new district.  A case "might have been brought" in a district (1) that would have subject matter jurisdiction, (2) in which defendants would be subject to personal jurisdiction, and (3) in which venue lies pursuant to a federal venue statute. *Sloan v. Pfizer, Inc.*, 2008 WL 4167083, at *3 (N.D. Cal. Sep. 8, 2008)

United States District Court
Northern District of California

1    (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)).  The Northern District of Texas would

2    have federal question jurisdiction over the ADEA claim here, 28 U.S.C. § 1331, and it would have

3    personal jurisdiction over Defendant because Defendant's headquarters is in Fort Worth, Texas,

4    which is within the Northern District of Texas.  *See* ECF No. 27-1 ("Simone Decl.") ¶ 8.  Finally,

5    venue is proper in the Northern District of Texas because American resides in that district and is

6    the only defendant in this case.  *See* 28 U.S.C. § 1391(b).  Accordingly, the case could have been

7    brought in the Northern District of Texas.

               **ii.      Convenience and Interest of Justice Factors**

8         The Court now determines whether this action should be transferred to the Northern

9    District of Texas for convenience of the parties and witnesses and in the interest of justice.  28

10   U.S.C. § 1404(a).  Various factors are considered when adjudicating motions to transfer and

11   perform the analysis on a case-by-case basis.  *Dillon*, 2014 WL 5409040, at *13.  The Court

12   considers each factor in turn.

               a.   Convenience of the Witnesses and the Availability of Compulsory Process to
                    Compel Attendance of Non-party Witnesses

13        "The convenience of witnesses is said to be the most important factor in passing on a

14   transfer motion.  Of particular importance is the convenience of non-party witnesses and their

15   relative importance in the case."  *CES Grp., LLC v. DMG Corp.*, 2015 WL 457405, at *3 (N.D.

16   Cal. Feb. 3, 2015); *see also Ventress v. Japan Airlines*, 486 F.3d 1111, 1119 (9th Cir. 2007)

17   (affirming transfer where "most potential witnesses resided" in new forum).  That a forum can

18   compel attendance of unwilling non-party witnesses favors litigating the case in that forum.  *See*

19   *Arete Power, Inc. v. Beacon Power Corp.*, 2008 WL 508477, at *10 (N.D. Cal. Feb. 22, 2008).

20        Defendant identifies several groups of witnesses who live in Texas and specifically Tarrant

21   County, where Defendant has its headquarters and which is within the Northern District of Texas.

22   First, Defendant says that according to its records, many flight attendants who may be opt-in

23   plaintiffs reside in Tarrant County, Texas, although they also come from a "wide variety of other

24   states."  Simone Decl. ¶ 10.  Defendant says that current employees in its finance, compensation,

25   human resources, flight service operations, flight service administration, and labor and

United States District Court
Northern District of California

communication departments all work at Defendant's headquarters in Tarrant County, Texas, and that the "vast majority" of them also reside there. *Id.* ¶ 13. Defendant also identifies five former American employees who were involved in the creation and implementation of the VEOPs who have left the company but still reside in the Dallas-Fort Worth area:

- Cornelius Boone, former VP, Global People Operations and Diversity and Inclusion;
- Patrick O'Keefe, former SVP, People
- Neisha Strambler-Butler, former VP, Compensation and Benefits
- Gregory Schwendinger, former VP, Financial Planning and Analysis
- Jill Surdek, former SVP, Flight Service

*Id.* ¶¶ 14(a)-(e).

In response, Plaintiffs do not dispute that some of the relevant groups of Defendant's employees are located in Texas, but say that they plan to depose potential witnesses (including the non-party witnesses Defendant identifies) where they reside or by videoconference and record video depositions for any witness who cannot be subpoenaed to trial. MTT Opp. at 14. Plaintiffs also claim that one of the former employees Defendant identifies in fact resides in San Jose, California, which is within this District. *Id.* Finally, Plaintiffs say that flight attendants located across the country are all potential witnesses, and that Plaintiff Kincheloe is a resident of this District.

The Court finds that this factor favors transfer to the Northern District of Texas, although not as strongly as Defendant claims. Defendant has established that some of the primary groups and witnesses who created and administered the VEOPs are located near Defendants' headquarters in Texas, but Defendant is an airline, so the cost of travel for its employees and its witnesses to another forum is essentially $0. Plaintiffs have not disputed that four of the five former employees who Defendant identifies as having the most relevant information are located in Texas, but they also acknowledge that one of the most important witnesses (Mr. Boone) is now the Chief People Officer at eBay, which is located in this District. Although Plaintiffs' argument that every potential flight attendant is a witness is unpersuasive (because, by bringing this lawsuit as a collective action, Plaintiffs are contending that Defendants VEOPs were universally

United States District Court
Northern District of California

1     discriminatory), Plaintiff Kincheloe is a witness who is located in this District, even if the two

2     other named Plaintiffs do not reside here.  Finally, because the majority of important non-party

3     witnesses are located in the Northern District of Texas, they would be subject to compulsory

4     process in that venue but not in this one.  Fed. R. Civ. P. 45(c)(1), (2).  The convenience of the

5     witnesses factor thus does favor transfer.  *See Carder v. Cont'l Airlines, Inc.*, 2009 WL 10725727,

6     at *2-3 (S.D. Cal. Sep. 28, 2009) (transferring case to forum where defendant was headquartered

7     and "many of its executives, managers, and operating personnel" worked); *Hoefert v. American*

8     *Airlines, Inc.*, 2018 WL 2740276, at *2-3 (D. Ariz. June 7, 2018) (granting transfer where

9     defendant identified witnesses based at headquarters in Fort Worth, Texas who would likely

10    testify at trial).

11                  b.   The Plaintiffs' Choice of Forum

12         Ordinarily, a "plaintiff's choice of forum should rarely be disturbed" except where "the

13    balance of factors is strongly in favor of the defendants," *Sec. Inv'r Prot. Corp. v. Vigman*, 764

14    F.2d 1309, 1317 (9th Cir. 1985), and the defendant must make a "strong showing of

15    inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v.*

16    *Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).  However, where a plaintiff asserts

17    a class or collective action, his choice of forum is "often accorded less weight" and the focus shifts

18    to the extent of each party's contact with the forum and the connection between the plaintiff's

19    cause of action and the forum.  *See Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1185

20    (N.D. Cal. 2010) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).  The reduced weight

21    in part "serves as a guard against the dangers of forum shopping," especially where a

22    representative plaintiff does not reside within the District.  *Foster v. Nationwide Mut. Ins. Co.*,

23    2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007).

24         Here, because Plaintiffs assert a collective action, the ordinary deference to their choice of

25    forum is lessened.  They are asserting claims on behalf of at least dozens of opt-in plaintiffs from

26    states across the country.  And although Defendant has not claimed that this suit was filed here

27    due to forum shopping, only one of the three named Plaintiffs (Kincheloe) lives in this forum,

28    while one of the others (Rudine) lives in Texas, the location of the forum to which Defendant

seeks transfer.  Simone Decl. ¶ 9.  Plaintiffs cite to several other representative actions in which a court granted some deference to a plaintiff's choice of the original forum, but in those cases the court shifted its analysis to consider the contacts of the parties and connection of the cause of action with the forum instead of giving automatic deference.  *See Hendricks v. StarKist Co.*, 2014 WL 1245880, at *2-3 (N.D. Cal. Mar. 25, 2014) (finding "at least some deference" after analyzing contacts and connection); *Senne v. Kansas City Baseball Corp.*, 105 F. Supp. 3d 981, 1059 (N.D. Cal. 2015) (affording "some deference" after finding that "a significant portion of the named plaintiffs reside in California" and that "Plaintiffs assert numerous claims under California law on behalf of a California subclass").

Accordingly, the amount of deference to Plaintiffs' choice of forum depends on the contacts of the parties with Plaintiffs' chosen forum and the connection between Plaintiffs' cause of action with the forum.  *Roling*, 756 F. Supp. 2d at 1185.  Those factors are analyzed below.

c.   The Contacts Relating to the Plaintiffs' Cause of Action in This Forum

Defendant argues that there is no connection between the cause of action and this District because the VEOPs were "adopted, negotiated, and administered" out of Fort Worth, Texas, and that Plaintiffs only generally allege that Defendant operates flights out of this District.  MTT at 16-17.  Plaintiffs respond that the forum must be where the effect of the allegedly discriminatory policy is felt, including where the plaintiff works and where the decision to engage in an allegedly discriminatory practice is implemented.  MTT Opp. at 9-10 (quoting *Passantino v. Johnson & Johnson Consumer Prods. Co.*, 212 F.3d 493, 505-05 (9th Cir. 2000)).  Having considered these arguments, the Court concludes that this factor does not favor transfer.

Plaintiffs do overstate the consideration that must be given to the place where an allegedly discriminatory policy is felt.  They cite to *Passantino* in support of this argument, but that case does not go as far as Plaintiffs say.  *Passantino* involved a Title VII claim—brought in an individual capacity—against Johnson & Johnson for allegedly passing over the plaintiff for promotions because of her sex.  212 F.3d at 500.  Johnson & Johnson argued that venue was improper in Washington because the decision to not promote the plaintiff was made in New Jersey.  *Id.* at 504-05.  The Ninth Circuit rejected that argument, finding venue proper in

United States District Court
Northern District of California

Washington because that was "where the effect of the unlawful employment practice [was] felt." *Id.* Importantly, however, the Ninth Circuit's decision was founded on Title VII's specific venue provision, which allows suit in the judicial district in which a plaintiff worked or would have worked. *See* 42 U.S.C. § 2000e-5(f)(3). The Court also drew parallels to other statutes with specific venue provisions. *See Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 607 F.2d 245, 252 (9th Cir. 1979) (venue proper where employee works under ERISA-specific venue provision, 29 U.S.C. § 1332(e)(2)). The Title VII venue provision is narrower than the general venue statute, which governs ADEA claims. *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at \*7 (N.D. Cal. July 11, 2018). And even the narrower Title VII venue provision provides for multiple districts in which a suit may be brought. *See Passantino*, 212 F.3d at 506 ("This is not to suggest that an action involving a failure to promote is not also appropriately brought in the district in which the employment decision is made."). So venue need not unequivocally be in this District.

Nevertheless, the Court does not agree with Defendant that it can entirely disregard that Plaintiff Kincheloe and many other flight attendants felt the effects of Defendant's allegedly discriminatory VEOPs in this District. *See* MTT at 16 (arguing that there is "no connection" between Plaintiffs' claim and this District). The Court finds that the location where the effects of the VEOPs are felt should be considered as part of this analysis, even under the general venue statute. *See Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088-89 (N.D. Cal. May 1, 2018) (in challenge to venue in § 1983 case, considering "not simply where the decisions were made regarding the . . . training policies but also where the decisions were implemented and [their] effects felt"). To ignore the effects of the allegedly discriminatory policies would entirely and improperly discount the experiences of the collective in the venue analysis—including here, where Plaintiff's counsel has represented that, at the time of the hearing, 46 of the 87 collective members who live in California (out of approximately 800 potential opt-ins) have already opted in.

On balance, the Court finds that this factor does not favor transfer. The locus of the facts underlying the creation of the VEOPs is in Texas where Defendant conceived, developed, sent out, and implemented the VEOPs from its corporate headquarters. This means that the Northern

District of Texas has a substantial connection to Plaintiffs' cause of action because every flight attendant who entered into a VEOP has a connection with that forum.  However, the effects of the VEOPs were dispersed in judicial districts across the country where flight attendants work and reside.  And Plaintiff Kincheloe felt the effects of the VEOPs in this District where he worked and resided.  Defendants' cause-of-action-related connections to this forum are limited to those flight attendants who worked or resided here, but Plaintiffs have represented that there are a significant number of those opt-in and potential opt-in flight attendants.  Accordingly, this factor does not weigh in favor of transfer.

### d.   The Respective Parties' Contacts with the Forum

The Court similarly considers the parties' contacts with this forum independent of the cause of action asserted.  On Plaintiffs' side, only Plaintiff Kincheloe is alleged to have any connection to this District by working and residing here.  *See* MTT Opp. at 10.  Plaintiff Rudine resides in Texas (where Defendant seeks to transfer this case), and Plaintiff Christafferson is in Illinois.  *See* MTT at 20.  Defendant is alleged to operate flights out of this District, and it entered into VEOPs with at least 87 potential opt-ins who work or reside here.  *See* MTT Opp. at 8.  Of course, Defendant's contacts with this forum pale in comparison to its contacts with its home forum in the Northern District of Texas.  But in considering this factor in particular, the Court is mindful that a case should not be transferred if it "merely shift[s] the inconvenience [of litigating] from the moving party to the opposing party."  *Jackson v. Euphoria Wellness, LLC*, 2020 WL 5366419, at *8 (N.D. Cal. Sep. 8, 2020) (citing *Decker*, 805 F.2d at 843).  Accordingly, the Court finds this factor neutral—both Plaintiffs and Defendant have some connections with each forum, independent of the cause of action.  *Gomez v. Wells Fargo Bank, NA*, 2009 WL 1936790, at *5 (D. Ariz. July 2, 2009) (factor did not significantly influence analysis where parties had contacts in both forums) (citing *Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003)).

### e.   The Costs of Litigating in This District and the Location of Documentary and Testimonial Evidence

Courts also consider both the location of relevant documentary evidence and the costs of

litigating in the two forums.  *See Ventress*, 486 F.3d at 1119 (affirming transfer where "most of the documentary evidence, including [defendant's] personnel files," were located in the new forum).  Defendant first posits that the documents pertaining to the VEOPs are all located at its corporate headquarters, and that there is no relevant documentary evidence located in California.  Mot. at 19.  But "the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum."  *Fanning v. Capco Contrs., Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010); *see also Lax*, 65 F. Supp. 3d at 780 ("[W]here electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information."); *contra Hoefert*, 2018 WL 2740276, at *3 (finding relevant documents "less expensive to produce" in Defendant's home forum).  Defendant does not allege that there is any relevant non-document or non-testimonial evidence related to this action that could not be digitized.

Separate from documentary evidence are the costs of obtaining the testimonial evidence from the witnesses Defendant has identified and that the Court has already found somewhat favor litigating in the Northern District of Texas.  "[L]itigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions."  *Italian Colors*, 2003 WL 22682482, at *5.  As outlined above, Defendant has identified several material witnesses who reside in the Northern District of Texas and who made decisions central to the VEOPs.  But Defendant is an airline, and as Plaintiffs point out, the cost of travel for airline employees and its witnesses is essentially $0.  MTT Opp. at 13.  Plaintiffs' counsel has also stated that they plan to depose witnesses where they reside or by videoconference from locations near the witnesses' residences, reducing the need for these witnesses to travel.  *Id.* at 14.  Accordingly, this factor is neutral.[1]

---

[1] Some courts also compare the time to disposition in the two forums as a measure of "cost," but the Northern District of Texas and this District are not significantly different.  *See* National Judicial Caseload Profile, U.S. Courts, *available at* https://tinyurl.com/659xe6hh (in 2020, N.D. Tex.: 13.3 months; N.D. Cal.: 11.4 months); *Ctr. for Biological Diversity v. McCarthy*, 2015 WL 1535594, at *5 (N.D. Cal. Apr. 6, 2015) (difference of 1.4 months was "modest at best" and insufficient to make the congestion factor material).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

f.   The Location Where the Agreements Were Negotiated and Executed

Where a contract is drafted, accepted, and executed in different locations, each of those places is entitled to some consideration in a transfer analysis.  *See, e.g.*, *Sienkiewicz v. Balda Solns. USA, Inc.*, 2012 WL 4097713, at *4 (N.D. Cal. Sep. 17, 2012) (factor neutral where settlement agreement negotiated in Germany and executed by different parties in North Carolina, California, and Germany); *Hansen v. Combined Transp., Inc.*, 2013 WL 5969863, at *2 (W.D. Wash. Nov. 7, 2013) (factor neutral where defendant executed agreement in Oregon and plaintiff signed agreement in Washington).  But as with the location of documentary evidence, the location where the relevant agreements were negotiated and executed is less relevant in an age of electronic exchange of contracts.  *See David v. Alphin*, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007).

To the extent this factor is to be given any weight, then it is neutral.  Here, Plaintiff Kincheloe says that he received, reviewed, and accepted Defendant's VEOP in this District, and that at least 46 other opt-in flight attendants did the same.  MTT Opp. at 13-14.  And Defendant drafted and executed the agreement itself at its headquarters in the Northern District of Texas.  Plaintiffs have not alleged that any back-and-forth negotiation of the VEOP agreements occurred, as it did in some of the cases it cites that found multiple forums implicated in the analysis of this factor, so that does not implicate alternative forums.  *See Monterey Bay Military Hous. v. Ambac Assur. Corp.*, 2018 WL 11269183, at *9 (N.D. Cal. Jan. 2, 2018) (evidence presented that negotiation occurred by phone and email from plaintiff's chosen forum).  This factor is thus also neutral.

g.   Familiarity of the Forums with Governing Law

It is desirable to litigate a case at a forum that is familiar with the governing law.  *See Apple Inc. v. Wi-LAN Inc.*, 2014 WL 4477362, at *5 (N.D. Cal. Sept. 11, 2014).  However, neither the Northern District of California nor the Northern District of Texas is more familiar with the ADEA because it is a federal law.  *See Monterey Bay*, 2018 WL 11269183, at *10.  This factor is thus neutral.

*        *        *

The Court finds that, although it is a close question, Defendant has not carried its burden to

12

1   demonstrate that the factors "clearly favor" transfer to the Northern District of Texas.  *Lax*, 65 F.

2   Supp. 3d at 776.  The Court will thus not transfer this case on statutory grounds.

3        **C.     Forum Selection Clause**

4        Defendant second argues that a forum selection clause in the VEOP agreement specifies

5   federal court in Tarrant County, Texas as the proper venue for lawsuits "relating to" the VEOPs.

6   MTT at 10-15; *see also* ECF No. 27-1, Exhibit B ¶ 7.  Plaintiffs counter that the forum selection

7   clause is invalid because it was part of a group of allegedly supplemental terms that Defendant

8   attempted to impose without additional consideration upon flight attendants who had already been

9   accepted into Defendant's VEOPs, and that to the extent there is any doubt about the validity of

10  the clause, the Court should conduct an evidentiary hearing on the matter.  MTT Opp. at 4-6.

11  Defendant contends that the clause is enforceable because Plaintiffs cannot carry their "heavy

12  burden" of showing that the clause is invalid.  MTT at 12; MTT Reply at 4-6.  On the record

13  before it at present, the Court cannot determine whether the forum selection clause is valid and

14  enforceable.

15       Forum selection clauses are presumptively valid and "should only be set aside if the party

16  challenging the agreed-upon forum can overcome the 'heavy burden' of clearly showing that

17  'enforcement would be unreasonable and unjust.'"  *Rahimi v. Mid Atlantic Professionals, Inc.*,

18  2018 WL 3207383, at *4 (S.D. Cal. June 29, 2018) (quoting *M/S Bremen v. Zapata Off-Shore Co.*,

19  407 U.S. 1, 15, 17 (1972)).  One way in which a forum selection clause can be "unreasonable" is if

20  "the inclusion of the clause in the agreement was the product of fraud or overreaching."  *Holland*

21  *Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007).  This may be the case

22  where "the *inclusion of that clause in the contract* was the product of fraud or coercion."  *Richards*

23  *v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (emphasis in original).  Alleging fraud

24  in the inducement of the contract generally is not sufficient.  *Prima Paint Corp. v. Flood &*

25  *Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

26       The First Amended Complaint does contain allegations that the inclusion of the clause in

27  the agreement was "the product of fraud or coercion."  *Richards*, 135 F.3d at 1297.  Plaintiffs

28  allege that the forum selection clause was part of a set of terms that Defendant "demanded"

13

Plaintiffs and other flight attendants agree to, despite Plaintiffs already having "accepted" Defendant's offer of early retirement and despite Plaintiffs receiving no additional consideration for the additional terms.  *See* FAC ¶¶ 25-29 (alleging that Defendants foisted releases of claims on Plaintiffs after they had already accepted the early retirement offers); MTT Opp. at 4-6 (arguing the release, which included the forum selection clause, is invalid under either California or Texas law).

> These allegations run up against two presumptions.  First, the presumption of the validity of the forum selection clause, absent Plaintiffs carrying their "heavy burden" of showing that the inclusion of the forum selection clause *itself* in the contract—rather than the entire agreement— was fraudulent.  *See Prima Paint Corp.*, 388 U.S. at 404.  Whether these allegations are sufficiently specific to the forum selection clause itself—rather than the entire agreement or set of releases—is questionable.  The second issue is the presumption under both Texas and California law that a written instrument has sufficient consideration if any consideration is recited, with the burden on the opposing party to rebut the presumption.  *See Hoagland v. Finholt*, 773 S.W.3d 740, 743 (Tex. App. 1989) ("[A] written instrument reciting a consideration imports one, and with such a recitation, [the court] must presume the consideration was sufficient."); Cal. Civ. Code §§ 1614 ("A written instrument is presumptive evidence of a consideration."), 1615 ("The burden of showing a want of consideration sufficient to support and instrument lies with the party seeking to invalidate or avoid it.").  The release agreement does list consideration, including 456 hours of pay, 30 months of benefits, and retiree travel privileges.  MTT Opp. at 2.  There is thus a serious question whether Plaintiffs have met their burden to overcome this presumption of valid consideration.

> Still, to hold at this juncture that the clause is valid and transfer this case to the Northern District of Texas on this basis would be premature.  Plaintiffs base much of their theory of the case on the invalidity of the releases, which are in the document that also contains the forum selection clause.  But the evidence that the parties have submitted to the Court regarding the exchange of materials related to the VEOPs is unclear and incomplete.  The parties have submitted various declarations attaching information sheets, executed releases, and other internal communications,

United States District Court
Northern District of California

but it is unclear when and in what sequence this information was exchanged.  Those issues would very likely determine if the forum selection clause is valid and whether proper venue lies in the Northern District of Texas.

The Court thus finds that further proceedings on this issue would be required if the parties continue to insist on judicial resolution of this issue because there is a genuine question of material fact over whether the forum selection clause controls here.  *See T&M Solar & Air Conditioning, Inc. v. Lennox Int'l, Inc.*, 83 F. Supp. 3d 855, 870-71 (N.D. Cal. 2015) (further proceedings on validity of forum selection clause warranted where genuine dispute of material fact whether forum selection clause was included in credit applications); *cf. Huang v. Futurewei Techs., Inc.*, 2018 WL 10593813, at *8-9 (N.D. Cal. Sep. 25, 2018) (further proceedings on validity of forum selection clause not warranted where no dispute whether forum selection clause was concealed). Accordingly, the parties SHALL meet and confer within 14 days of this Order and submit a proposed plan for further litigation on the validity of the forum selection.  If an evidentiary hearing is required, the Court's current schedule may cause delay of this case for a significant period of time.

For those reasons, Defendant's Motion to Transfer will be denied at this time because the § 1404(a) convenience factors do not favor transfer.  If there are further proceedings on the forum selection clause specified above, the Court will reevaluate whether transfer is appropriate based on the forum selection clause.

## III.   MOTION TO DISMISS

### A.   Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the

1   defendant is liable for the misconduct alleged." *Id.* When evaluating a Rule 12(b)(6) motion, the

2   district court must consider the allegations of the complaint, documents incorporated into the

3   complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police*

4   *Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor*

5   *Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

6       **B.    Analysis**

7       Defendant argues that the First Amended Complaint is subject to dismissal because

8   Plaintiffs have not plausibly alleged that the VEOP was discriminatory on the basis of age. MTD

9   at 9-10; MTD Reply at 4-9. Defendant says that Plaintiffs' allegations of pressure to retire do not

10  amount to a constructive discharge required to turn an early retirement program into an adverse

11  employment action, and that their direct evidence of discrimination doesn't establish that the

12  VEOPs targeted any flight attendant because of age. *See* MTD Reply at 5, 6. Plaintiffs argue that

13  they have sufficiently alleged that they did not face a voluntary choice in their retirement and that

14  comments by Defendant's CEO plausibly and certain terms of the VEOPs adequately allege

15  discriminatory motive. MTD Opp. at 7-8.

16          **i.    Constructive Discharge**

17      The ADEA creates a safe harbor for an employer's early retirement programs. *See* 29

18  U.S.C. § 623(f)(2)(B)(ii) ("It shall not be unlawful for an employer . . . to take any action

19  otherwise prohibited under [the ADEA] to observe the terms of a bona fide employee benefit plan

20  that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes

21  of this chapter.") In general, early retirement programs that "provid[e] incentives to more senior

22  workers to retire rather than to continue to work[] do not create a prima facie case of age

23  discrimination under the ADEA." *Tusting v. Bay View Federal Sav. & Loan Ass'n*, 789 F. Supp.

24  1034, 1037 (N.D. Cal. 1992) (citing cases). This is because "an offer of incentives to retire early

25  is a benefit to the recipient, not a sign of discrimination." *Henn v. Nat'l Geographic Soc'y*, 819

26  F.2d 824, 828 (7th Cir. 1987). But an early retirement program can amount to an adverse

27  employment action if the employee can establish that the program constituted a "constructive

28  discharge," or created "working conditions so onerous or demeaning that the employee has

effectively been fired in place and compelled to leave." *Id.* at 826.  This occurs when "a reasonable person in the employee's position would feel compelled to resign under the circumstances." *Kalvinskas v. Cal. Inst. of Tech.*, 96 F.3d 1305, 1308 (9th Cir. 1996).  The parties do not dispute that the VEOPs are properly classified as early retirement programs, *see* MTD at 5, MTD Opp. at 7, so Plaintiffs need to allege constructive discharge to classify the program as an adverse employment action.

Plaintiffs do not assert any plausible allegations that establish a constructive discharge.  Plaintiffs allege that Defendant "did not provide the [older] flight attendants with a truly voluntary choice" about accepting the VEOP by "discouraging or prohibiting them from wearing masks on airplanes at the beginning of the pandemic," "denying them leaves of absence" until enough people had accepted the VEOPs, "denying them reduced work schedules," and "misinforming the flight attendants that there would be no subsequent early retirement offers."  FAC ¶¶ 21-23.  None of these allegations suffice.  First, the guidance from the Centers for Disease Control at the time of the first VEOP in March 2020 was that healthy people who did not work in the healthcare sector and were not taking care of an infected individual did not need to wear masks.  *See* Deborah Netburn, "A timeline of the CDC's advice on face masks," L.A. TIMES (July 27, 2021), *available at* https://tinyurl.com/35es4byv.  It was not until April 3, 2020 that the CDC changed its guidance to recommend face masks in public and when traveling, in response to "a growing body of evidence that people who do not appear to be sick [were] playing an outsize role in the COVID-19 pandemic."  *Id.*  Less than a month later, on May 1, 2020, Defendant *required* its flight attendants to wear masks.  *See* "American Airlines Announces Enhanced Cleaning Procedures and New Personal Protective Equipment for Customers," AMERICAN AIRLINES NEWSROOM (Apr. 27, 2020), *available at* https://tinyurl.com/45tzkakj.  Accordingly, accepting Plaintiff's allegation regarding Defendant's position on mask use as true, that position was not inconsistent with CDC guidance at the time of the March 2020 VEOP and adapted to new CDC guidance as it issued.  A mask policy not inconsistent with the CDC's mask guidance would not make a "reasonable person" feel "compelled to resign." *Kalvinskas*, 96 F.3d at 1308.

The Court similarly finds that Plaintiffs' other allegations do not plausibly establish

1    constructive discharge.  Denial of leaves of absence or reduced work schedules, even if "an

2    unpleasant alternative[]" to early retirement, would not make a reasonable person feel compelled

3    to resign.  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 940-41 (9th Cir. 2009) (choice

4    between early retirement and plaintiff's belief that, if he did not retire, he would be terminated and

5    lose his health insurance while his wife was suffering from breast cancer did not establish

6    constructive discharge).  Additionally, each of these policies were generally applicable to flight

7    attendants, not targeted at just older ones, and so cannot establish constructive discharge.  *See*

8    *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 193 (5th Cir. 1988) (no claim to constructive discharge

9    where "all employees are subject to the same working conditions").

10                    **ii.    Alleged Direct Evidence of Discrimination**

11            Plaintiffs also allege that they have direct evidence that the VEOP amounted to age

12    discrimination.  Plaintiffs allege that Defendant's CEO Douglas Parker stated on video that

13    Defendant's purpose in creating the March 2020 VEOP was "to motivate people who really were

14    close to retiring to retire."  FAC ¶¶ 2, 18.  They further allege that differences between the March

15    2020 and July 2020 VEOPs create a "reasonable inference" that the earlier program targeted flight

16    attendants on the basis of age.  Defendant says that Mr. Parker's comment is not age-related, and

17    that the other allegations are similarly implausible.  MTD Reply at 5.

18            These allegations do not amount to direct evidence of age discrimination.  First, Mr.

19    Parker's comment is not direct evidence that the VEOP was discriminatory.  Comments about

20    "retiring" or "retirement" are not direct evidence of discrimination if unaccompanied by evidence

21    that they are being used as a cover for age.  *See France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir.

22    2015) ("repeated retirement discussions" were "not direct evidence" of age discrimination, but at

23    most "circumstantial evidence"); *Ilias v. Ripley Ent. Inc.*, 403 F. Supp. 3d 793, 806 (N.D. Cal.

24    2019) ("[W]hile retirement discussions can be circumstantial evidence of discrimination, they are

25    not direct evidence of discrimination."); *accord Treadway v. Cal. Prod. Corp.*, 659 F. App'x 201,

26    207 (6th Cir. 2016) ("[T]he terms 'retire' and 'retirement' alone, without any evidence that they

27    are being used as a proxy for age to express discriminatory bias, are not direct evidence of age

28    discrimination.").  Here, Mr. Parker's isolated comment does not refer to age and only uses the

United States District Court
Northern District of California

terms "retiring" and "retire."  Taken in full, the comment merely expresses that Defendant created to program to "motivate" its employees to retire by offering them incentives to do so.  The statement is fully consistent with the ADEA-sanctioned purpose of using an early retirement program to "provid[e] incentives to more senior workers to retire rather than to continue to work[]."  *Tusting*, 789 F. Supp. at 1037.  As such, it is not plausible direct evidence of discrimination.

Nor are the other allegations plausible direct evidence of discrimination.  Plaintiffs allege that Defendant designed the later VEOP to be "more attractive to younger flight attendants" by including healthcare benefits, which the March 2020 VEOP did not contain.  FAC ¶ 5.  Plaintiffs say this creates a "reasonable inference" that the March 2020 VEOP was targeted toward older employees who did not need health benefits because they qualified for Medicare.  MTD Opp. at 4. But "[d]irect evidence is evidence which, if believed, proves the fact without inference or presumption."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  Plaintiffs themselves admit that these allegations require an inferential step to find discrimination.  Plaintiffs further allege that the question-and-answer sheet provided with the March 2020 VEOP contained information about pensions.  FAC ¶ 19.  But this too suffers from the same problem:  it requires an inferential step that offering information about pensions meant that the program was discriminating on the basis of age.  It is thus not direct evidence of discrimination, and at best flimsy circumstantial evidence of the same.  Even taking each of these three allegations together, the Court finds that the allegations do not establish a plausible basis to find the VEOPs were discriminatory.

Plaintiffs rely heavily on *Forsyth v. HP Inc.*, 2020 WL 2524517 (N.D. Cal. May 18, 2020), to support their argument, but that case is inapposite.  In that case, HP instituted a workforce reduction plan ("WFR") that was facially neutral, but that Plaintiffs alleged was intended to weed out older employees.  Plaintiffs alleged that HP CEO Meg Whitman stated publicly that HP was "working very hard to recalibrate and reshape [its] labor pyramid" so that it would have a "whole host of young people" at its base.  *Id.* at *2.  Plaintiffs alleged that HP terminated thousands of existing employees and urged its hiring managers to "really think" about hiring younger, "early

19

1    career" employees to replace them. *Id.* Plaintiffs there also alleged that HP created early

2    retirement policies "that were meant to pressure older employees to leave 'voluntarily' or risk

3    being involuntarily fired under the WFR." *Id.* Judge Davila denied HP's motion to dismiss in

4    part, finding "ample direct evidence . . . that the WFR was created and implemented to

5    discriminate against older workers" and that the plaintiffs had sufficiently alleged that they were

6    "terminated because of the discriminatory WFR plan." *Id.* at *8.

7          *Forsyth* is not similar to this case. First, the program at issue in *Forsyth* involved

8    workforce reduction—terminations—in addition to an early retirement program. Termination is

9    an adverse employment action by itself, whereas an early retirement program is only an adverse

10   employment action if the program amounted to a constructive discharge. *Henn*, 819 F.2d at 826.

11   As analyzed above, Plaintiffs have not plausibly alleged constructive discharge. Second, in

12   *Forsyth* plaintiffs made several allegations of direct age discrimination, such as Ms. Whitman's

13   comment about reshaping the labor pyramid to have "a whole host of young people" at that base

14   and HP's directives to managers to prioritize hiring younger employees to replace the older fired

15   workers. In contrast, Mr. Parker's alleged comment does not speak of age, and Plaintiffs' other

16   allegations are not direct evidence of discrimination. Finally, plaintiffs in *Forsyth* alleged that the

17   early retirement program was "meant to pressure older employees to leave 'voluntarily' or risk

18   being involuntarily fired" under the WFR. There is no such allegation here, nor have Plaintiffs

19   alleged that Defendant instituted any WFR during the relevant time period.

20                            \*      \*      \*

21          Taken individually or as a whole, Plaintiffs' allegations do not establish a plausible theory

22   of age discrimination. Because the Court finds that Plaintiffs have not adequately alleged

23   constructive discharge or provided plausible allegations of direct age discrimination, it does not

24   consider Defendant's other argument that the attributes of the VEOPs themselves undermine

25   Plaintiffs' theory of the case.[2] Accordingly, Defendant's Motion to Dismiss will be granted.

26

27

28

United States District Court
Northern District of California

---

[2] For that reason, Defendant's request for judicial notice of two documents related to the VEOP policies, *see* ECF No. 44-1, is DENIED AS MOOT. If necessary, Defendant may renew the request in any subsequent response to an amended complaint.

### C.   Leave to Amend

"[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect[s]" identified in an order granting a motion to dismiss.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (leave to amend warranted where court "could conceive of facts" that, if alleged, would make claim viable).  Defendant argues that allowing Plaintiffs leave to amend would be futile because Plaintiffs have already had one chance to amend.  MTD at 9-10. But this is the first time the Court has adjudicated a motion to dismiss and identified the defects in Plaintiffs' allegations, and it may be possible for Plaintiffs to amend to rectify the defects.  The Court will thus allow Plaintiffs leave to amend.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Transfer is DENIED and Defendant's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.  If they believe they can rectify the defects discussed above, Plaintiffs SHALL file an amended complaint no later than 21 days from the date of this Order.  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Plaintiffs' claims with prejudice.

Additionally, the parties SHALL submit a proposed plan for litigation of the validity of the forum selection clause no later than 14 days from the date of this Order, in accordance with the directions laid out above.

This Order terminates ECF Nos. 27 and 44.


Dated:  September 23, 2021

BETH LABSON FREEMAN
United States District Judge