**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| ROBERT KINCHELOE, et al., | Case No.  21-cv-00515-BLF |
| Plaintiffs, |  |
| v. | **ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |
| AMERICAN AIRLINES, INC., | [Re:  ECF No. 114] |
| Defendant. |  |

In this case, Plaintiffs Robert Kincheloe, Vonna Rudine, and Sandra Christafferson bring a collective action against Defendant American Airlines, Inc. for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*  Plaintiffs' allegations center around American's Voluntary Early Out Programs ("VEOP"), early retirement programs offered by American in response to the COVID-19 pandemic that Plaintiffs claim discriminated against older flight attendants.  The Court previously dismissed Plaintiffs' First Amended Complaint with leave to amend, finding (in relevant part) that the first VEOP was not an adverse employment action. *See Kincheloe v. Am. Airlines, Inc.*, 2021 WL 4339198, at *9–10 (N.D. Cal. Sep. 23, 2021) ("*Kincheloe I*").

Now before the Court is American's motion to dismiss Plaintiffs' Second Amended Complaint.  ECF Nos. 112 ("SAC"), 114 ("MTD").  Plaintiffs oppose the motion to dismiss.  ECF No. 121 ("Opp.").  The Court held a hearing on the motion on April 14, 2022.  ECF No. 139.  For the reasons discussed on the record and explained below, American's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## I.    BACKGROUND

The Court chronicled the factual allegations in Plaintiffs' previous complaint in its order

granting American's motion to dismiss the First Amended Complaint.  *See Kincheloe I*, 2021 WL 4339198, at *1–2.  The central theory of the case remains unchanged in the Second Amended Complaint.  Plaintiffs allege that in March 2020 at the beginning of the COVID-19 pandemic, American offered to qualifying flight attendants an early retirement program ("March 2020 VEOP").  ECF No. 112 ("SAC") ¶ 14.  The March 2020 VEOP required flight attendants to have at least 10 years of seniority to participate.  *Id.* ¶ 26.  The March 2020 VEOP offered flight attendants approximately $31,122.00 per flight attendant in pay in exchange for early retirement.  *Id.* ¶ 14.  The offer had no flexible healthcare spending benefits.  *Id.* ¶ 35.  American allegedly provided no truly voluntary choice to older flight attendants to accept the March 2020 VEOP because it was denying leaves of absence and reduced work schedules, discouraging flight attendants from using personal protective equipment (such as masks), and misinforming them that there would be no further early retirement programs.  *Id.* ¶¶ 16, 20.  This was occurring at a time when domestic air travel decreased by 95% due to COVID-19 and health organizations were reporting that older individuals were at greater risk of severe illness or death due to COVID-19.  *Id.* ¶¶ 17–19.  American thus presented flight attendants with two alternatives:  (1) accept the March 2020 VEOP; or (2) engage in the "undesirable alternative of [continuing to] fly[] on commercial aircraft when approximately 95% of air travelers were unwilling to fly due to health concerns."  *Id.* ¶ 22.  839 flight attendants accepted the March 2020 VEOP.  *Id.* ¶ 24.  Of the 600 who have joined this collective action challenging the VEOP, only 6% were younger than 60 as of May 1, 2020.  *Id.*

In July 2020, American offered a second VEOP.  SAC ¶ 56 ("July 2020 VEOP").  The July 2020 VEOP offered the same benefits as the March 2020 VEOP, plus flexible healthcare spending benefits and roundtrip flight passes.  *Id.* ¶ 56.  This VEOP, Plaintiffs allege, was designed to attract younger flight attendants because they were generally not eligible for Medicare or flight privileges under other benefit programs.  *Id.* ¶ 57.

Plaintiffs allege a single violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  SAC ¶¶ 63–77.  The Court granted American's motion to dismiss the First Amended Complaint.  *See Kincheloe I*, 2021 WL 4339198, at *9–12.  The Court

United States District Court
Northern District of California

also denied American's motion to transfer this case to the Northern District of Texas under 28 U.S.C. § 1404(a) and deferred consideration of whether to transfer under an allegedly applicable forum selection clause.  *See id.* at *3–9.[1]  Plaintiffs filed the Second Amended Complaint on October 14, 2021, *see* SAC, and this motion followed.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III.   DISCUSSION

As it did in its motion to dismiss the First Amended Complaint, American argues that the operative complaint is subject to dismissal because Plaintiffs have failed to provide plausible allegations that the March 2020 VEOP was an adverse employment action, as is required to state a

---

[1] American has since indicated that it will no longer pursue transfer based on the forum selection clause.  ECF No. 104.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  claim under the ADEA.  MTD at 5–10.  American also argues that the terms of the VEOPs (of

2  which, American says, the Court can take judicial notice) "further undermine" Plaintiffs' claim.

3  *Id.* at 10–11.  Finally, American argues that even if Plaintiffs have sufficiently alleged a

4  constructive discharge, the disparate impact theory offered by Plaintiffs fails because seniority is a

5  permitted "reasonable factor other than age" under the ADEA.  *Id.* at 11–13.  The Court need not

6  reach the second and third arguments because it agrees with American that Plaintiffs have not

7  plausibly alleged a constructive discharge that would make the VEOPs adverse employment

8  actions.

9         The ADEA creates a safe harbor for an employer's early retirement programs.  *See* 29

10  U.S.C. § 623(f)(2)(B)(ii) ("It shall not be unlawful for an employer . . . to take any action

11  otherwise prohibited under [the ADEA] to observe the terms of a bona fide employee benefit plan

12  that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes

13  of this chapter.")  In general, early retirement programs that "provid[e] incentives to more senior

14  workers to retire rather than to continue to work[] do not create a prima facie case of age

15  discrimination under the ADEA."  *Tusting v. Bay View Federal Sav. & Laon Ass'n*, 789 F. Supp.

16  1034, 1037 (N.D. Cal. 1992) (citing cases).  This is because "an offer of incentives to retire early

17  is a benefit to the recipient, not a sign of discrimination."  *Henn v. Nat'l Geographic Soc'y*, 819

18  F.2d 824, 828 (7th Cir. 1987).  But an early retirement program can amount to an adverse

19  employment action if the employee can establish that the program constituted a "constructive

20  discharge," which occurs "when the working conditions deteriorate, as a result of discrimination,

21  to the point that they become sufficiently extraordinary and egregious to overcome the motivation

22  of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to

23  serve his or her employer."  *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting

24  *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)); *see also Knappenberger v. City

25  of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009) (constructive discharge due to "coercion inherent in

26  the choice between retirement and a complete deprivation of income").  This occurs when "a

27  reasonable person in the employee's position would feel compelled to resign under the

28  circumstances."  *Kalvinskas v. Cal. Inst. of Tech.*, 96 F.3d 1305, 1308 (9th Cir. 1996).  This circuit

United States District Court
Northern District of California

1   has "set the bar high for a claim of constructive discharge because federal antidiscrimination

2   policies are better served when the employee and employer attack discrimination within their

3   existing employment relationship, rather than when the employee walks away and then later

4   litigates whether his employment situation was intolerable." *Poland*, 494 F.3d at 1184.  Because

5   the parties are in agreement that the March 2020 VEOP was an early retirement program,

6   Plaintiffs must plausibly allege constructive discharge to state an ADEA claim.[2]

7        Plaintiffs do not clear the "high bar" to do so.  The Court has already evaluated Plaintiffs'

8   central allegations that they claim establish "sufficiently extraordinary and egregious" working

9   conditions, *Poland*, 494 F.3d at 1184—denying flight attendants leaves of absence and reduced

10  working schedules; misinforming flight attendants that there would be no subsequent early

11  retirement offers and no future increase in benefits under any VEOP plan and concealing the

12  requirement of releasing claims; and discouraging flight attendants from wearing personal

13  protective equipment on planes at the beginning of the pandemic.  *See* SAC ¶¶ 16, 20, 21.  In its

14  previous order, the Court found that these allegations did not suffice because American's position

15  on mask use was not inconsistent with CDC guidelines at the time, and thus a "reasonable person"

16  would not feel "compelled to resign" under this policy.  *Kincheloe I*, 2021 WL 4339198, at *10

17  (quoting *Kalvinskas*, 96 F.3d at 1308).  As to the denial of leaves of absence or reduced work

18  schedules, the Court found that even if they were an "unpleasant alternative" to early retirement,

19  those conditions too would not make a reasonable person feel compelled to resign.  *Id.*

20  Importantly, the Court also noted that the alleged denials of leaves of absence and reduced work

21  schedules were polices "generally applicable to flight attendants, not targeted at just older ones,

22  and so cannot establish constructive discharge."  *Id.* (citing *Bodnar v. Synpol, Inc.*, 843 F.2d 190,

23  193 (5th Cir. 1988)).[3]

24

25  [2] The Court has already rejected Plaintiffs' argument that they need not allege constructive

26  discharge to state a claim based on American's early retirement program.  *Kincheloe I*, 2021 WL 4339198, at *10; *contra* Opp. at 10–13.

27  [3] The Court also already rejected Plaintiffs' reliance on comments made by American's CEO that the VEOPs were instituted "to motivate people who were really close to retiring to retire."  *See*

28  *Kincheloe I*, 2021 WL 4339198, at *11–12.  The Court accordingly does not analyze those allegations again.

United States District Court
Northern District of California

1       Plaintiffs' efforts to add more allegations to support their constructive discharge argument

2    are not successful.  The bulk of Plaintiffs' new allegations focus on (1) the effects of COVID-19

3    on the air-traveling population and (2) the risk to older individuals generally when they contract

4    COVID-19.  For example, Plaintiffs now allege that the pressure from American's policies

5    (described above) was "compounded by" the public's awareness that flying on commercial airlines

6    increased the risk of contracting COVID-19.  *See* SAC ¶ 17 (citing report describing 95%

7    reduction in domestic air travel between February 2020 and April 2020).  Plaintiffs also describe

8    increased risks to older individuals from COVID-19 in general, including a February 2020

9    document reporting a 3.6% fatality rate for people 60–69 years old and an 8% fatality rate for

10    people over 70 years old who contracted the disease.  *Id.* ¶ 19.  Plaintiffs say that these facts

11    demonstrate that American "placed older flight attendants . . . at greater risk of COVID-19

12    infection" by forcing them to perform their job duties on planes.  Opp. at 9–10.  On this basis,

13    Plaintiffs argue that they have alleged a plausible constructive discharge claim.  *See* Opp. at 4.

14       These allegations, however, cannot plausibly establish constructive discharge because they

15    are not conditions created by American.  To state a claim for constructive discharge, the working

16    conditions alleged by Plaintiffs must deteriorate "as a result of discrimination," *Poland*, 494 F.3d

17    at 1184, not as a result of circumstances outside of the employer's control.  *See also Brooks*, 229

18    F.3d at 930 (employer liable "for constructive discharge when it imposes intolerable working

19    conditions"); *Rowell v. BellSouth Corp.*, 433 F.3d 794, 802 (11th Cir. 2005) (employer liable for

20    constructive discharge "if the employer deliberately makes an employee's working conditions so

21    intolerable that the employee is forced into an involuntary resignation").  American did not have

22    control over the volume of people willing to engage in domestic air travel or the disparate effects

23    of COVID-19 on the older population generally, and thus those conditions cannot be "as a result

24    of discrimination" such that they amount to a constructive discharge.[4]

25

26    ––––––––––––––––––

27    [4] Plaintiffs are correct that they need not plead that American created intolerable working conditions *with the intention of forcing employees to quit*.  Opp. at 3 (citing *Poland*, 494 F.3d at 1184 n.7).  The Court does not hold them to that standard.  *Poland* instead only requires pleading

28    that working conditions deteriorated "as a result of discrimination" by American.  *Accord* Reply at 4–5.

1       As American argues, if Plaintiffs' allegations about COVID-19's effect on older

2  individuals more generally were sufficient to state a claim for constructive discharge based on the

3  March 2020 VEOP, then American would have been required to treat older flight attendants *more*

4  *favorably* by granting them preferential treatment over younger flight attendants merely because

5  they were at greater risk if they caught COVID-19.  But this would be directly contrary to the law.

6  The ADEA does not "contemplate preferential treatment" for the older workers.  *Whitsitt v.*

7  *Barbosa*, 2007 WL 1725487, at *2 (E.D. Cal. Jun. 14, 2007); *accord Williams v. Gen. Motors*

8  *Corp.*, 656 F.2d 120, 129 (5th Cir. 1981) (ADEA "does not place an affirmative duty upon an

9  employer to accord special treatment to members of the protected age group").  Although COVID-

10  19 in general affects older individuals more severely than younger individuals, the ADEA does not

11  require American to grant older individuals preferential treatment with additional accommodations

12  not granted to other employees.  Instead, American allegedly instituted generally applicable

13  policies about leaves of absence, reduced work, and mask usage, which themselves cannot form a

14  basis for an ADEA claim.  *Bodnar*, 843 F.2d at 193.  Plaintiffs have no response to this

15  consequence of their theory.

16       The Court does not doubt that Plaintiffs faced what they deemed to be two "unpleasant

17  alternatives":  (1) accepting the March 2020 VEOP, or (2) flying on airplanes during the COVID-

18  19 pandemic when 95% of the traveling population had weighed that risk and decided not to fly.

19  Courts have repeatedly, however, found that a choice between "two unpleasant alternatives" is not

20  sufficient to state a claim for constructive discharge.  For example, in *Knappenberger*, an officer's

21  choice between (1) early retirement with health benefits, and (2) continuing to work while under

22  departmental investigation with the looming possibility of termination and loss of lifetime health

23  insurance when the officer's wife had cancer, did not amount to intolerable working conditions or

24  resignation induced by duress or coercion.  566 F.3d at 941–42.  And in *Bodnar*, retirement-age

25  employees' choice between (1) an early retirement program under pressure of only 15 days'

26  notice, and (2) continuing to work despite announcement of a cost reduction program that would

27  likely include terminations, was not a constructive discharge because the risk of termination due to

28  economic hardship "would be shared by all remaining employees."  843 F.2d at 194.  Here, all

United States District Court
Northern District of California

1 | flight attendants shared the risks of COVID-19, which was not a condition that American created.

2 | American offered qualifying flight attendants "a means to mitigate [the] risk" they felt from

3 | continuing to work under that COVID-19 environment "shared by all remaining employees":  the

4 | early retirement program.  *Id.*

5 |    The cases Plaintiffs cite do not alter the Court's conclusion.  First, Plaintiffs cite a number

6 | of constructive discharge cases in which individual plaintiffs alleged that their employers or other

7 | employees made their work environment intolerable through actions directed specifically at them.

8 | *See* Opp. at 5–6 (citing, *e.g.*, *Cabrera v. CBS Corp.*, 2018 WL 1225260, at *8 (S.D.N.Y. Feb. 26,

9 | 2018) (constructive discharge where employer "refused to intervene when [plaintiff] sought their

10 | help" to protect him from "abuse and threats" of other employees to "physically harm him"); *Kent*

11 | *by Gillespie v. Derwinski*, 790 F. Supp. 1032, 1040 (E.D. Wash. 1991) (constructive discharge

12 | where handicapped employee was "taunted by coworkers as being 'brain dead'" and a "'droolie'"

13 | and supervisor admonished her for "several hours" for handicap-related behavior)).  Those cases

14 | are not persuasive here in this collective action where no such targeted individual discrimination is

15 | alleged.[5]

16 |    Plaintiffs also cite a series of three cases against Corecivic, a private operator of

17 | correctional facilities, in which the plaintiffs alleged that Corecivic failed to ensure a "safe

18 | workplace" in response to COVID-19 in violation of the California Labor Code and OSHA

19 | regulations.  *See* Opp. at 11 (citing *Brooks v. Corecivic of Tenn. LLC*, 2020 WL 5294614 (S.D.

20 | Cal. Sep. 4, 2020); *Arnold v. Corecivic of Tenn. LLC*, 2021 WL 63109 (S.D. Cal. Jan. 6, 2021);

21 | and *Smith v. Corecivic of Tenn. LLC*, 2021 WL 927357 (S.D. Cal. Mar. 10, 2021)).  But those

22 | cases alleging violations of California Labor Code and public policy involve different legal

23 | frameworks than employment discrimination claims under the ADEA.  *See, e.g.*, Cal. Labor Code

24 |

---

25 | [5] For the first time at the hearing, Plaintiffs cited *Knight v. MTA N.Y. City Trans. Auth.*, 2021 U.S.
Dist. LEXIS 187672 (E.D.N.Y. Sep. 28, 2021).  *See* 4/14 Hrg. Tr. at 15:7–25.  That case,

26 | however, is inapposite.  The plaintiff in *Knight* alleged that her employer retaliated against her
after she was docked pay and denied overtime pay, not provided with equipment necessary to

27 | work remotely during the first few months of COVID-19, and denied permission to work remotely
even though other employees were permitted to work from home.  *Knight*, 2021 U.S. Dist. LEXIS

28 | 187672, at *5–6.  Here, Plaintiffs offer no allegations that American's COVID-19 policies treated
them differently than other flight attendants.

§§ 6400 *et seq.* (requiring employers to "furnish . . . a place of employment that is safe and healthful for the employees therein"); *accord Brooks*, 2020 WL 5294614, at *5 (noting that the case was different from one "involv[ing] a claim for employment discrimination, which necessarily involves differential treatment").

Plaintiffs have accordingly failed to plausibly state a claim for constructive discharge that would transform the early retirement program into an adverse employment action.  *Henn*, 819 F.2d at 828.  Without sufficient allegations of an adverse employment action, Plaintiffs cannot sustain their ADEA claim based on disparate treatment because the early retirement program amounts to a "benefit" to those who could take advantage of it.  *Id.*; *contra* Opp. 4–5.  Similarly, Plaintiffs also cannot sustain an ADEA claim under other theories, such as that American's policies created a disparate impact on older employees, because those theories all require an adverse employment action.  *See Emrico v. U.S. Steel Corp.*, 404 F. Supp. 2d 802, 828 (E.D. Pa. 2005) (disparate impact claim under ADEA "challenges an adverse employment action resulting from a facially neutral practice"); *accord Nguyen v. Superior Ct.*, 2014 WL 4467850, at *3 (N.D. Cal. Sep. 9, 2014) (under Title VII, disparate impact claim "allege[s] that [plaintiff] suffered an adverse employment action and was treated differently from similarly situated members of the unprotected class"); *contra* Opp. at 14–17.[6]

The Court will deny leave to amend.  Leave must ordinarily be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).  Here, the Court previously dismissed Plaintiffs' complaint in a reasoned order discussing why Plaintiffs failed to allege constructive discharge.  *Kincheloe I*, 2021 WL 4339198, at *9–12.  The Court noted that failure to cure the identified deficiencies would result in dismissal of Plaintiffs' claims

---

[6] Because the Court dismisses on the grounds that Plaintiffs have failed to adequately allege an adverse employment action, the Court need not consider American's arguments regarding the VEOPs themselves.  The request for judicial notice of those policies is accordingly DENIED AS MOOT.

United States District Court
Northern District of California

with prejudice.  *Id.* at *12.  The Court has now found that Plaintiffs have failed to cure the defects and still do not plausibly allege constructive discharge.  Accordingly, the Court will deny leave to amend.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that American's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.  Judgment will issue.

Dated:  May 4, 2022

_____
BETH LABSON FREEMAN
United States District Judge